Fitzsimons *vs.* Fitzsimons.

MARY ANN FITZSIMONS *vs.* PAMELA FITZSIMONS AND OTHERS.

An administrator, with the will annexed, *held* not liable to a legatee, for personal effects of the estate detained by the administrator, after the debts were, or should have been, paid, and then lost by inevitable accident—the loss having occurred some time after a bill for account, exhibited by the legatee against the administrator, had reached a stage which entitled the legatee to apply for all such administrative orders as were requisite for the security of the effects, or the protection of the interests of the legatee, and before any such application was made.

Testator died in 1859, leaving, among his effects, a bond for money, well secured by a mortgage of real estate. In October, 1863, when the money due on the bond was not needed for the purposes of administration, his administrator received payment of the bond in Confederate Treasury notes, then greatly depreciated, and immediately invested the proceeds in 8 per cent. bonds of the Confederate States: *Held,* That the receipt of the Confederate Treasury notes was a *devastavit* which made the administrator liable to account for the amount of the bond in good money.

Bill for account, filed January, 1860, by legatee, against administrator, with the will annexed. The administrator, with the knowledge of the legatee, deposited, from year to year, the annual balances, for the benefit of the estate, in a savings bank in good credit; and no objection was made by the plaintiff to this mode of securing and investing, at interest, the moneys of the estate, until after the bank became insolvent: *Held,* That the administrator could not be made to account for interest on the annual balances, any more than for the annual balances themselves.

BEFORE LESESNE, CH., AT CHARLESTON, MAY, 1868.

Bernard Fitzsimons, late of Charleston, the testator in the cause, died December 4, 1859, leaving a widow, the defendant, Pamela, an infant daughter, Eugenia Clara, born in March, 1857, and a sister, the plaintiff, Mary Ann.

By his will, he devised and bequeathed his whole estate, real and personal, to his sister and daughter, as tenants in common, and appointed his sister guardian of the person and estate of his daughter.

The will was proved before the Ordinary on 10th December, 1859, and on the 27th day of the same month and year, administration, with the will annexed, was granted to the defendant, Pamela—the defendants, James White and M. McBride, being the sureties on her administration bond.

The testator's personal estate consisted of three negroes, some household furniture, the remnant of his stock in trade as a harness maker, and other articles of less value, appraised, in the aggregate, at $5,183.66, and of rights and credits, as follows: (1.) A bond of R. W. Gale, due 25th November, 1859, for $3,000 and interest, secured by a mortgage of real estate; and, (2.) other bonds, stock in certain insurance companies, cash on hand, and debts due.

Under an order granted by the Ordinary, all the visible chattels, except the slaves, were sold by the administratrix early in January, 1860. By virtue of another order from the Ordinary, the three slaves were offered for sale on the 17th January, 1860, for one half cash, and, as to the other half, on a credit of one and two years, with interest. They were bid off by Dr. Davega, on behalf of the plaintiff, at the aggregate price of $3,160, but the terms of sale were not complied with. The original bill, in this case, was filed on the 19th, and a supplemental bill, on the 27th January, 1860. The administratrix and her two sureties were the parties defendant. The facts hereinbefore stated were set forth, and it was alleged that the debts of the testator were inconsiderable; that the sale of the slaves was not necessary for their payment, and that the plaintiff, as well on behalf of her ward as herself, greatly preferred receiving them specifically. It was also charged that the defendant, Pamela, had suddenly and clandestinely withdrawn herself and her child from the jurisdiction of the Court; and it was prayed, *inter alia*, that the administratrix may be enjoined from selling the slaves, or demanding the price at which they were bid off; that she may be compelled to surrender the custody of her infant daughter to the plaintiff, as testamentary guardian; and that she and her sureties may be required to account for her administration of the personal estate of her testator.

On the filing of the original bill, an order was made by one of the Masters, enjoining the defendant, Pamela, from selling or removing the slaves.

On the 25th October, 1860, the same Master, in pursuance of an order made by himself, with the consent of the parties, submitted a report on the accounts of the administratrix, in which he stated the cash balance on hand to be $2,167.06. Among the documentary proofs referred to by him, was the following: "Deposit book of Palmetto Savings Institution. First deposit, made 3d March, 1860, $1,510.89. Amount remaining now on deposit, $2,616.66."

At October Term, 1860, the case was heard by His Honor Chancellor Carroll, on the pleadings and evidence, and also on the report and exceptions thereto by the plaintiff.

From His Honor's decree, which was filed on the 25th September, 1861, it appears that the defendant, White, was the agent of the administratrix in all matters appertaining to the business of the estate; that the preparation of the inventory, the conduct of the sales, the custody of the books of account, bonds and evidences of debt,

26

the collection of moneys, making of deposits, and rendering the account, had all devolved upon him. His Honor refused to make any order in reference to the custody of the infant. He sustained some of the exceptions to the report, and ordered that it be recommitted, and reformed upon the principles of the decree; and he gave the plaintiff leave to amend her bill by making the infant a party. The plaintiff gave notice of appeal, but it was said, that the notice was shortly afterwards withdrawn.

On the 5th May, 1862, the bill was amended by making the infant, Eugenia Clara, a party defendant, and on the 20th February, 1863, her answer by guardian, ad litem, was filed.

No further proceedings were taken in the case until the 16th July, 1867, when a reference was ordered upon the accounts of the administratrix. It was commenced on 15th October, 1867. James White was the principal witness for the administratrix. He produced her account down to the close of the year 1863, and vouched it; and he testified that, in September, 1863, R. W. Gale offered to pay his bond in Confederate currency; that he, the witness, consulted the solicitor of the administratrix on the subject, and received a reply, in writing, dated 29th September, 1863, in which he stated that, as the Act of the Legislature legalized the investment of trust funds in Confederate securities, he was of opinion Mrs. Fitzsimons, as administratrix, would be justified in receiving payment, provided she immediately re-invested in a security recognized as valid by the law; that, acting upon this advice, he, the witness, on the 9th October, 1863, received from Gale $3,777.40, in Confederate currency, in full payment of his bond, and, on the next day, he invested, for the estate, $3,740 of that sum in 8 per cent. bonds of the Confederate States. The bonds were purchased from the agent of the Confederate Government. The witness produced, in evidence, the deposit book of the estate with the Palmetto Savings Institution, and testified that all the moneys of the estate were deposited in that institution.

Much other evidence was given which it is deemed unnecessary to recite. The report of the Master, dated April 22, 1868, is as follows:

"This case was heard before Chancellor Carroll at the October Term, eighteen hundred and sixty, and on the twenty-fifth day of September, eighteen hundred and sixty-one, a decree was filed by him, in which it was ordered and decreed, that the report be re-

committed and reformed upon the principles of the decree; that the plaintiff have leave to amend her bill by making her infant niece, Eugenia Clara Fitzsimons, a party to the suit; and that, in regard to the litigation in reference to the custody of the said infant, Eugenia Clara Fitzsimons, the parties, respectively, pay their own costs, and that the residue of the costs be paid out of the estate of the testator, Bernard Fitzsimons. I have been attended by the solicitors of the plaintiff and defendants, and a large amount of testimony has been introduced upon the subject of the accounts.

"The bill was amended on the fifth day of May, eighteen hundred and sixty-two, in accordance with the terms of the decree, and the answer of the infant, Eugenia Clara Fitzsimons, filed on the twentieth day of February, eighteen hundred and sixty-three.

"No further proceedings have been taken as to the custody of said infant, who has been residing with her mother, in the city of Savannah, Georgia, since the commencement of the proceedings. This issue is not now made before me. The questions which have arisen and been discussed before me, relate, principally, to the matters of accounts since the hearing of the case in October, eighteen hundred and sixty. Up to that time, the accounts were rendered by the administratrix and before the Court, and are only to be modified in accordance with the directions of the decree. Upon the accounts of the administratrix since October, eighteen hundred and sixty, it is objected:

"*First*, That it was improper to have received the principal and interest of the bond of R. W. Gale; and it is claimed that the administratrix should be held responsible for the same, in consequence of the loss which has accrued by reason of its investment in Confederate bonds. I cannot, however, concur in this. The bond of Gale was past due, and payment thereof tendered, and, before the receipt of the amount, the administratrix applied, through her agent, Mr. White, to her solicitor, for advice upon the subject, and he gave it as his opinion, that she would be justified in receiving payment, provided she immediately re-invested in a security recognized by the law. The evidence is also abundant, to the effect that it was usual, at the time that the amount of this bond was received by the administratrix, to receive payment of debts due in currency, and the most prudent and judicious persons did so. The evidence also shows that the administratrix, through her agent, on the tenth day of October, eighteen hundred and sixty-three, the day subsequent to the receipt of the

amount of the bond, invested the same with the financial agent of the Confederate Government in Confederate eight per cent. bonds. I am of the opinion that no liability can attach to the administratrix as to the principal or interest of this bond.

" *Second,* That the administratrix should be held liable for the value of the stocks and slaves contained in the inventory, and which have become valueless by reason of the results of the war. It does not appear to me, however, that this claim can, in any point of view, be sustained. The administratrix is not responsible, either for the emancipation of the slaves, or the depreciation of the value of the stocks. She could not settle the estate after the decree of Chancellor Carroll, because the plaintiff had given notice of appeal, and the infant, Eugenia Clara, was not made a party until the twentieth of February, eighteen hundred and sixty-three. No steps, whatever, were taken by the plaintiff in the case, from the time of the notice of the appeal, to the sixteenth day of July, eighteen hundred and sixty-seven, when a reference was ordered, on the motion of the plaintiff's solicitor. In the meantime, the administratrix kept these slaves and stocks, to abide the result of the proceedings in the case; and that they have proved valueless is the misfortune of the parties, and certainly upon no principle can the administratrix be held responsible for them.

" *Third,* That the administratrix should be held accountable for the amount deposited by her agent in the Palmetto Savings Institution. It seems, however, that the plaintiff is precluded from making this objection, because the deposit book of the said institution, in which the amounts to the credit of the estate were deposited, from time to time, as they were received by the administratrix, was before the Court in the case at the hearing in eighteen hundred and sixty, and that no objection was made at that time as to the deposits of the said amounts. The financial character of the institution is also established to have been high, and trustees and executors and administrators were well warranted in placing funds of estates under their charge in such institution.

"It appears, by the deposit book, that the amount therein to the credit of the agent of the administratrix, is sufficient to cover the balance, with interest, due to the estate on her accounts. I recommend that, upon the transfer of the said deposit book to the Master, and of all the securities remaining in her possession, the administratrix be discharged from further accountability.

" The decree of Chancellor Carroll directs that the fees paid

by the administratrix for services rendered in that branch of the suit which is for an account of the administration, should be alone allowed, and that so much of the account of fees as covers the services rendered in the matter in controversy, in which she is personally interested, should be disallowed. I have, accordingly, allowed the solicitor of the said administratrix, the one-half charged for professional services up to the trial in October, eighteen hundred and sixty. The difference between the amount so allowed and that charged in the account of the administratrix, I regard as reasonable and proper to be allowed for services rendered by the solicitor of the administratrix, since the hearing, in October, eighteen hundred and sixty."

The plaintiff excepted to the report, for the following reasons:

1. Because it is submitted that the complainant is entitled to interest on the annual balances in the administratrix's hands from the first of January, 1861, on which day, as it appears by her account passed by the Ordinary on the 8th January, 1866, and offered in evidence, there was a balance of over three thousand dollars, while there remained only about six hundred dollars of unpaid debts. There was nothing, therefore, to prevent the said administratrix from paying over or tendering to the complainant, or paying into Court, that balance, on the day or at any time after, except that she had wrongfully, and in violation of her oath and the testator's will, fled from, and was out of the State; but the Master has not decided the question.

2. Because there was nothing but the causes mentioned in the first exception which prevented the administratrix from surrendering to the complainant, on the said 1st January, 1861, or at any time after, until February, 1865, the negroes and choses in action of the estate, according to the demand of her original and supplemental bills. Her neglect or refusal to do so was a conversion of the whole estate, and the Master should so have decided.

3. Because the said account shows that the administratrix was in possession of the negro, Henry, up to at least the 1st of October, 1862, receiving and retaining his wages—and the testimony is, that about that time he was put into the work house by her agent, and there detained until liberated by the Federals, in 1865: and of the negro Jessie, to 1st July, 1861, also receiving and retaining his wages; and there is no evidence that either ever was, with the consent of the administratrix, in the possession of the complainant;

the report is, therefore, wrong in declaring that the administratrix is not liable either for their wages or their value.

4. Because, as the administratrix held the insurance stocks and bonds enumerated in the inventory, and, especially, the bond of R. W. Gale, secured by a mortgage of real estate, in trust for the complainant and her ward, her obligation, as administratrix "*cum testamento annexo*," was to surrender or turn them over to those entitled, under the will of her testator, as soon as the debts were paid or provided for, which was on the 1st of January, 1861; and she, therefore, had no authority to call in the bonds, much less to re-invest, as late as October, 1863, without the consent of the complainant, who was always in the State, and, up to —— day of October, 1863, in the city of Charleston, living in great poverty and want, and the Master should have reported her liable for the same.

5. Because the administratrix had no right, in October, 1863, after all the debts had been fully paid, to receive payment of Gale's bond and mortgage in any currency, much less to sell it for Confederate money; she was a mere stakeholder or trustee, and the Master should have so decided.

6. Because the complainant is in no manner bound by the deposits in the Palmetto Savings Institution; they were not investments, but mere deposits, made in the name of White, as agent, and not even in the name of the administratrix or for the estate; they are mentioned in the account as a mere memorandum, and not as a debit, while the administratrix has always credited the estate with the moneys so deposited as cash on hand; the Master is, therefore, wrong in deciding that the complainant is concluded in not taking this exception to the first report. In this particular, as the first account stood, there was nothing to except to.

7. Because the assets of all kinds ought to have been turned over to the legatee, who was in the extremity of distress in 1861 or 1862, for, by her bills, she had demanded them; instead of which, they were willfully and wrongfully withheld, for the purpose of harrassing her, and, as far as possible, disappointing testator's will; the administratrix and her sureties are, therefore, liable for the appraised value of the estate, less so much as was applied to the payment of debts; and the Master is wrong in supposing that the complainants' notice of appeal from Chancellor Carroll's decree of 1861, which appeal was only from so much of the decree as related to the infant Eugenia, and not from so much as related to the accounts, and was not prosecuted in any manner, removed the obliga-

tion of the defendant to turn over or tender the assets to the complainant, or impaired the complainants' right to have them.

8. Because there was no *laches* on the part of the complainants; every effort was made to recover the proceedings in the previous case, and the report, as soon as the records were returned to the city. It is not pretended that the defendants have been even inconvenienced by the delay; and so much of the Master's report as imputes delay to the complainant is erroneous. The delay necessary to the proceedings, to make the infant, who had been wrongfully and clandestinely removed from the State by the defendant, a party, ought not to be imputed to the complainant—such delay in no manner interfered with the matters of account, or the right of the complainant to the assets, as well for herself as for her ward.

The decree of His Honor the Chancellor is as follows:

LESESNE, Ch. This cause came up in the Master's report on the account of the defendant, as administratrix of Bernard Fitzsimons, and exceptions thereto taken by the plaintiff. The subject-matter of the exceptions is all considered and discussed in the report, and the Court is satisfied with the Master's conclusion. The exceptions rest mainly on the position, that it was the duty of the administratrix to turn over the estate to the legatee in January, 1861, and seek to charge her with the consequences alleged to have resulted from the failure to do so.

But the legatee had filed this bill, and brought the administratrix before the Court in January, 1860. The cause was heard in October of that year, and was in the Chancellor's hands in January, 1861; his decree was rendered some months after, and contained instructions to the Master in taking the administratrix's account. It would have been a very unusual thing, if she had turned over the estate before the Master should make his report, and the Court its decree thereon. The report did not come in for a long time, but no blame is imputable to her for the delay. The exceptions are overruled, and the report confirmed and made the judgment of the Court.

The plaintiff appealed, and now moved to reverse the decree of His Honor Chancellor Lesesne, for the following reasons:

1. Because, in overruling the several exceptions filed by complainant to Master Tupper's report, His Honor the Chancellor decided contrary to law, equity, and the facts which were before him; and

the complainant respectfully asks that her said exceptions may be considered with her grounds of appeal.

2. Because the complainant is entitled to interest on the annual balances in the administratrix's hands from the first day of January, 1861.

3. Because the defendants are liable to the complainant for not surrendering, on the 1st January, 1861, or in a reasonable time after, when demanded, the negroes and choses in action of the estate.

4. Because the administratrix and her sureties are liable, as well for the wages as the value of the negroes of the estate.

5. Because the administratrix had not the right or authority, in October, 1863, when all the debts were paid, to receive payment of Gale's bond in any currency, much less to exchange or sell it for Confederate money.

6. Because the complainant is not bound by the deposits in the "Palmetto Savings Institution," made in the name of White, agent, neither is that included in this particular by Master Tupper's first report.

7. Because the complainant's notice of appeal from so much only of Chancellor Carroll's decree as related to the custody of the infant, did not remove the obligation of the defendants to put her in possession of the estate in 1861, and after.

8. Because there was no *laches* on the part of the complainant, and the delay in making the infant, who had been *wrongfully* removed from the State, a party, ought to be imputed to the defendants.

9. Because the decree is, in other respects, contrary to law and equity, and should be reversed.

*DeTreville*, for appellant.

1. An executor or administrator is liable for interest on the annual balances in his hands.—*Turner* vs. *Turner*, 1 Jacob & Walker, 39; *Dawson* vs. *Massey*, 1 B. & B., 231; *Ashburn* vs. *Thomson*, 13 Ves., 402; *Littleshales* vs. *Gascoigne*, 3 Bro. C. C., 73; *Darrell* vs. *Darrell*, 3 Des. Eq., 241; *Brown* vs. *Guignard*, Bail. Eq., 460; *Lafursh* vs. *Richards*, Bail. Eq., 487; *Pettis* vs. *Smith*, 10 Rich. Eq., 356; *Chesnut* vs. *Strong*, 2 Hill, 146; *Oswald* vs. *Givens*, Riley Ch., 38; *Duncan* vs. *Dent*, 5 Rich. Eq., 7; *Duncan* vs. *Folin*, Chev. Eq., 143.

On the evidence, the administratrix is liable for the value of

the negroes.—2 Strob. Eq., 227 ; Roper on Legacies, 1 Vol., 566, 568.

3. After payments of debts, and assent to, and admission of legatee's rights, an administrator or executor has no right to change assets from the form in which they stood at death of testator.— Williams on Ex'ors, 1239, 1240, 1241, 1242, 1243.`

4. That administratrix had no right to invest moneys of estate in Confederate bonds.

5. That the deposit in the Palmetto Savings Institution was in no sense an investment, nor was it for the estate.

6. That, after the demand by bill, it was the duty of the administratrix to tender the balance in her hands to the legatee, or ask to pay it into Court.—*McAlister* vs. *Boyce*, McM., 275; *Chesnut* vs. *Strong*, 2 Hill, 146.

*Buist*, contra.

Interest is not to be calculated on the accrued balances in the hands of the administratrix, because the moneys received by her were deposited in the Palmetto Savings Institution, where interest accrued on them from the dates of deposit.

The rule laid down in the cases as to annual balances in the hands of executors and administrators, applies where they have the amounts in their hands, and not to any such case as the present.

No liability can attach to the administratrix for not delivering the negroes and choses in action, and she is not responsible for the emancipation of the said negroes, or the valuelessness or depreciation of the choses in action.

The bill was filed by the complainant for the settlement of the estate, and it is submitted, in the answer of the administratrix, that the complainant should be required to give security for the same or any portion to which she might be decreed entitled, as she was insolvent, and it would, without such security, be wasted; and, in her supplemental answer, the administratrix avows her readiness to make such settlement when the proper time arrived.

Chancellor Carroll, in his decree, decides that the infant, Eugenia Clara, should have been made a party defendant, and that she must become such before any order could be made, either as to her person or estate.

The complainant took no steps to make her a party until the 20th February, 1863, and then it was done while the solicitors of the defendant were absent from Charleston in military service, and

without any notice to them or at their office; and no further steps of any kind whatever were taken in the case, until the 16th July, 1867, when a reference before the Master was ordered, on motion of the solicitor of complainant.

The complainant appealed from the decree of Chancellor Carroll, and no notice whatever of the abandonment of the said appeal was ever given, and none was to be presumed from the appeal not being prosecuted, for the sessions of the Appeal Court in the State were suspended during the war.

The first report of the Master in the case was upon an order made, by consent, for an account of the administration of the estate; and, by the decree of Chancellor Carroll, it was ordered, that this report should be recommitted, and reformed upon the principles therein adjudged.

The second report of the Master was not made until 23d April, 1868; and, in the meantime, the losses to the estate, by the emancipation of the negroes, the valuelessness of the choses in action, and loss of the fund deposited in the Savings Institution, had accrued by reason of the war.

The administratrix had no right or authority to turn over the estate to the complainant before the final decree of the Court, and it was impossible for her to have done so; but, even if it had been done, it does not appear how thereby the losses consequent upon the war, by the emancipation of the negroes, &c., could have been avoided.

This administratrix cannot be held liable for the losses which have accrued in consequence of the war.—*Bellinger* vs. *Gervais*, 1 DeS. Eq., 174.

The bond of R. W. Gale, when collected, was past due, and the obligor tendered payment. Before the receipt of the amount, the administratrix consulted her solicitor, and, through his advice, by letter, the amount due on the said bond was received, and, shortly thereafter, invested, as appears by the receipt of I. S. K. Bennett, in Confederate eight per cent. bonds.

This investment was in conformity with the provisions of the Act of 21st December, 1861, (13 Stat., 87,) and, being made honestly, and in good faith, it is submitted that the administratrix will not be held responsible for the loss which has arisen by reason of said investment.

The evidence establishes that the currency of the country, in 1863, was Confederate Treasury notes, and that creditors gen-

erally, at that time, received payment of debts due in that currency.

Decision of Supreme Court U. S., in *Thorington* vs. *Smith*, (8 Wal., 1) ; *McLure* vs. *Steele*, 14 Rich. Eq., 113; *McPherson* vs. *Lynah*, 14 Rich. Eq., 121; *Manning* vs. *Manning*, 12 Rich. Eq., 410; *Whitlock* vs. *Whitlock*, 13 Rich. Eq., 170.

The deposit of the moneys received by the administratrix, on account of the estate, in the Palmetto Savings Institution, was before Master Tupper, in 1861, when the first report was made, and also before the Court, and no objection was made by the said complainant to the propriety of the deposit made.

The evidence shews that, at the time, this institution was in a most prosperous and flourishing condition, and regarded as a place where money could be securely deposited and draw interest.

For the loss which has accrued by the depreciation of the value of these deposits, the administratrix cannot be held responsible.— *Morton* vs. *Smith*, 1 DeS. Eq., 123.

The administratrix certainly cannot be held responsible for the delays in the case, more especially for any delay in making the infant a party; for there is not the slightest evidence to establish the fact that such delay was caused by her; and the decree of Chancellor Carroll, filed on September 25, 1861, ordered the complainant to make the said infant a party, and to amend her bill for this purpose, which amendment was not made until 25th May, 1862.

March 28, 1870. The opinion of the Court was delivered by

WILLARD, A. J. The complainant, M. A. Fitzsimons, as legatee of her deceased brother, Bernard Fitzsimons, and as testamentary guardian of his infant child, co-legatee with herself, has brought her bill against Pamela Fitzsimons, the widow and administratrix *cum testamento annexo*, of her brother, alleging the personal detention of her ward, and, also, actual and intended waste of the estate of her testator, and praying that her ward may be delivered into her personal custody, and that the administratrix may account for such estate. The only aspect of the case before the Court, under the present appeal, relates to certain items disallowed on the accounting before the Master. The testator died in May, 1859, leaving a will, but naming no executor. Letters of administration *cum testamento annexo*, were issued to the defendant, and within a year thereafter this bill was filed. No question is made as to the bill being prematurely filed, nor as to the liability

of the defendant to account. The estate that came into the hands of the administratrix was largely in excess of the indebtedness of the testator, but has become greatly impaired, owing, among other things, to the casualties of the war, and the balance is still retained in the hands of the administratrix.

The principal question in the case is, whether the unreasonable detention, by the administratrix, of the effects of the estate, subjects her to liability for that portion lost by inevitable accident.

The account was, originally, taken by the Master, as appears by his report, bearing date 25th October, 1860, under an order made by the consent of the parties. From the date of this order, at the least, all parties were entitled to apply to the Court for such administrative orders as were requisite for the security of the fund, and for partial, or full, distribution, according to circumstances. It was subsequent to this period of time that the events happened through which the loss occurred. The plaintiff could have guarded against such losses by suitable orders. The defendant ought not to be placed in a worse position through the failure of complainant to make available her proper remedies.

Interest is allowed by way of damages for the unreasonable detention of moneys.

If the property is lost by inevitable accident, it may as well be traced to the failure of the complainant to make provision for its security, as to the act of the defendant in unreasonably retaining the effects of the estate beyond the period requisite for the payment of the debts of the estate. There is, therefore, no preponderance of equity calling upon the Court to shift the burden of such loss wholly upon the defendant. To apply this principle to the case in hand, it will be necessary to examine the items embraced in the grounds of appeal, constituting the exceptions to the account taken.

The first ground of appeal is general, bringing to view the exceptions to the Master's report passed upon by the Chancellor; but as these exceptions are reiterated in the succeeding grounds, the matters embraced in the first will arise for special consideration under such succeeding grounds of appeal.

The second ground demands, as against the administratrix, interest on annual balances from the 1st of January, 1861. As a general proposition, this is undoubtedly correct. The only question is, whether it is applicable to the case, and that will be best considered in connection with the sixth ground.

The third and fourth grounds claim that the defendant, in con-

sequence of her failure to surrender the estate on the 1st of January, 1861, has made herself liable for the value and wages of the negroes, and for the choses in action. As it regards the choses in action, it is to be presumed that, so far as the same were not rendered valueless by circumstances occurring during the period they were held by the administratrix, they have been accounted for. It would appear, from the Master's report, dated April, 1868, that the choses referred to consisted of stocks that depreciated in the hands of the administratrix, a bond of R. W. Gale, and a credit for moneys deposited in the Palmetto Savings Institution. The bond and the deposit will receive separate consideration hereafter, leaving the question of the depreciation of the stocks to be considered with that of the loss of the negroes by emancipation. These losses must be regarded as inevitable, and fall within the rule above stated. As it regards the loss of the negroes, the complainant, having arrested the proceedings for their sale by her injunction, has no just ground of complaint. It has been contended, however, that the interruptions to the course of business in the Courts, occasioned by the war, prevented the complainant from obtaining the requisite orders. It is not in proof that she made any effort to obtain orders affecting the security of the property, and it is not to be assumed that administrative orders of that character could not be obtained. But, if it were otherwise, the consequences of an interruption in the business of the Courts would have to be borne where it might chance to fall, and is not the subject of relief of the character sought.

In regard to the claim to the wages of the slaves, the evidence is contradictory as to whether they were paid to the complainant; and it was peculiarly the province of the Chancellor to determine the question of superiority of weight to be accredited to this evidence.

The administratrix had no authority to collect the amount of Gale's bond in Confederate currency. The money was not needed for the purpose of administration, and the mortgage securing the bond could not have been discharged otherwise than by payment, or tender in gold or silver, or the lawful currency of the United States. Accepting Confederate currency was an unnecessary act, that would have been regarded, at the time, in no other light than a sacrifice of at least a portion of the value of that asset, and actual loss has been realized therefrom. The fifth ground of appeal must, therefore, be allowed.

The sixth ground of appeal objects to the allowance of credit to

the defendant for a deposit in the Palmetto Savings Institution, of the funds of the estate. This institution appears to have been in good standing until about the close of the war, when it became insolvent. It appears, by the account stated by the Master, that the administratrix was credited, March 2d, 1860, with a check for the amount then deposited in the Savings Institution. Whether any disposition was made of this check at the time, does not appear, nor does it appear that the plaintiff made any attempt to withdraw the deposit, or, indeed, objected to its security. It must, therefore, be considered that the deposit, if allowed to remain and to be increased by subsequent deposits, was at the risk of the complainant, so far as she had an interest in it, who could protect herself by the requisite orders. In the absence of proof to the contrary, it is to be assumed, that an amount equal, at least, to what ought to appear in the annual balances, was kept on deposit in the Savings Institution. Assuming such to be the case, and the complainant, on the principle of allowing a credit to the administratrix for the amount so deposited, is not entitled to an allowance of interest on the annual balances, independent of the interest accruing on the savings deposit. It does not appear that the administratrix received actual payments by way of interest on the savings deposit; and it must be assumed, as the case stands, that the interest was, from time to time, credited by the bank in account, and that the accumulations of interest have been lost, with the rest of the deposit, by the failure of the institution. The complainant is not entitled, therefore, to the allowance of interest forming the subject of the second ground of appeal.

The seventh and eighth grounds of appeal are argumentative merely, tending to free the complainant from a charge of *laches* in permitting the defendant to continue in possession of the fund. The question involved is not one of *laches*, but of the complainant's failure to use her proper remedies, previous to the loss of the property, disentitling her to throw that loss upon the defendant.

The ninth ground is general, and cannot be considered independently of a specification of the matters to which it relates.

All of the grounds of appeal, except the fifth, are disallowed, and the cause must be remanded to the Circuit Court, to ascertain the liability of the defendant in reference to the bond of R. W. Gale, upon the principles before set forth.

*Moses,* C. J., concurred.